CHRISTOPHER W. DYSART and    )
THE DYSART LAW FIRM,         )
                             )
  Plaintiffs/Counter-Defendants,  )
                             )    No. 4:08CV00185 FRB
                             )
        v.                     )
                             )
                             )
BRENDA GWIN,                 )
                             )
  Defendant/Counter-Plaintiff.    )

**MEMORANDUM AND ORDER**

      Plaintiffs Christopher W. Dysart and The Dysart Law Firm ("plaintiffs") filed this Declaratory Judgment action against their former client, defendant Brenda Gwin ("defendant"). Now pending before this Court is Plaintiffs' Motion for Summary Judgment on Their Complaint for Declaratory Judgment, (Docket No. 32/filed January 9, 2009), in which they seek enforcement of a Settlement Fee Agreement or, alternately, a Contingency Fee Agreement entered into by the parties in conjunction with plaintiffs' representation of defendant in a lawsuit. All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

## I.    Background

      The following facts are not in dispute. Defendant, who formerly worked as a cook for American River Transportation Company

("Artco"), hired plaintiffs to represent her in a "Jones Act" lawsuit against her employer for back injuries allegedly sustained on the job. On or about December 8, 2000, plaintiffs and defendant entered into a valid, written Contingency Fee Agreement, which provided, <u>inter alia</u>, that defendant would bear responsibility for lawsuit-related expenses, including court filing fees, expert witness fees, deposition and transcript fees, fees for obtaining copies of medical records, long-distance phone calls, photocopies, postage, and other reasonable and proper expenses of litigation. (Docket No. 34-14.) The Contingency Fee Agreement further provided that plaintiffs would collect, as legal fees, 25% of any recovery defendant may receive via settlement or trial. Defendant had negotiated this fee down from plaintiffs' usual 1/3 contingency fee, and testified that she did so based upon her 20 years of experience dealing in real estate negotiations.

After suit was filed, the parties deposed numerous witnesses, and plaintiffs prepared and tendered 15 retained and non-retained expert witnesses for deposition. Trial of the case was continued numerous times due to Ms. Gwin's worsening medical condition, and the need for updated medical evaluations in light thereof. At his deposition, plaintiff Christopher Dysart testified that, throughout the course of this litigation, defendant maintained that her back pain was excruciating, debilitating, and rendered her completely unable to work.

In August of 2007, defendant testified at a supplemental

deposition that she had severe back pain all day, every day, and that her ability to bend her back had become more restricted. Following this deposition, counsel for Artco produced a surveillance video tape, recorded shortly before the supplemental deposition, showing defendant sanding and painting railings on steps outside her house. The video depicted defendant laughing, repeatedly bending beyond 90 degrees, standing on one foot, kneeling down and removing paint using a power sander, a wire brush, and a scraper for extended periods of time. Artco's counsel also produced still photographs showing defendant bending beyond 90 degrees, and engaging in other activities she had testified she was unable to do.

Upon reviewing the surveillance materials and the deposition transcripts of defendant and other witnesses in the case, and considering them in light of other aspects of the case which tended to weigh in Artco's favor, plaintiffs concluded that defendant's credibility had been destroyed, and that a favorable jury verdict was unlikely. Plaintiffs and defendant discussed these matters, and defendant agreed that settlement was in her best interests.

Plaintiffs subsequently negotiated a settlement with Artco for $300,000.00. Defendant asked plaintiff Christopher Dysart if he would reduce his legal fee because she was receiving less money than the original estimated case value, and he agreed. Plaintiffs, defendant, and defendant's husband subsequently signed

a Settlement Fee Agreement, via which defendant would receive a net settlement of $55,878.02, which was the amount left over after both the litigation expenses and defendant's medical liens were paid. (Docket No. 34-14.) Specifically, the calculations were as follows:

| | |
|---|---|
| <u>Gross Settlement</u>: | $300,000.00 |
| Statement Charges: | $ 21,689.19 |
| Cost Advanced: | $101,876.16 |
| Outstanding Expenses: | $ 12,044.19 |
| Liens: | $108,493.99 |
| Postage to pay Liens: | $ 18.45 |
| Net Settlement to Client: | $ 55,878.02[1] |

<u>Id.</u>

The Settlement Fee Agreement further provided that plaintiffs would take no legal fee out of the settlement proceeds, but would instead be able to keep any money they were able to negotiate off of defendant's medical liens, as long as that amount did not exceed 25% of $300,000.00. Specifically, the Settlement Fee Agreement provided: "[a]s we also discussed on the phone, rather than taking my 25% legal fee off of the gross settlement of $300,000.00, it is our agreement that I will be able to keep any money that I am able to reduce off of your liens noted above as my legal fee in your case. If I am able to recover more money from the liens than my legal fee would have been as 25% of $300,000.00, then all amounts in excess of this amount will be returned to you."

---

[1]The total of all expenses was $135,627.99.

Id.  The Settlement Fee Agreement was signed by plaintiff Christopher Dysart, defendant, and defendant's husband.  In response to the instant Motion, defendant does not dispute that the Settlement Fee Agreement was a valid contract.

The Settlement Fee Agreement also addressed the issue of expenses, and provided that "calculations of outstanding expenses may not be exact and may increase or decrease based upon additional expenses that come to our attention and our ability to get a refund from our expert witness Robert Taylor."  Id.  The Affidavit of Deborah Dysart, who works as a paralegal for The Dysart Law Firm and whose duties included keeping an account of the expenses in plaintiff's case, states that, due to subsequent transactions (including a credit from Robert Taylor), the expenses had been reduced to $129,206.73.  (Docket No. 34-18, Paras. 9-12.)  The original Contingency Fee Agreement also provided that defendant would be liable for all litigation expenses.

It is undisputed that defendant fares better under the Settlement Fee Agreement than she does under the Contingency Fee Agreement.  In fact, in her response to the instant summary judgment motion, defendant submits that, under the Contingency Fee Agreement, she would receive "a negative $28,000.00," while under the Settlement Fee Agreement she would receive "$55,000." (Defendant's Memorandum of Law in Response to the Motion for Summary Judgment, Docket No. 48 at 2.)

Defendant signed a settlement release and stipulation of

dismissal on or about September 12, 2007, which remains in effect. In their Complaint, plaintiffs allege that defendant has not abided by the Settlement Fee Agreement and has therefore materially breached it, and they are therefore entitled to enforce the previously entered-into Contingency Fee Agreement. In response, defendant filed a Counterclaim, alleging professional negligence. Therein, defendant alleged that plaintiffs used duress, undue influence, coercion and threats to get her to sign the Settlement Fee Agreement.

Under this Court's original Case Management Order, the parties were to disclose their experts by August 1, 2008. Defendant did not disclose any experts by this date. On September 9, 2008, defendant filed a Motion to Amend the Scheduling Order and give her additional time to designate her expert witness. (Docket No. 19.) Plaintiffs opposed the Motion, and a hearing on the matter was scheduled for September 24, 2008. (Docket No. 22.) Defendant's attorney, however, failed to appear for the hearing.[2] (Docket No. 25.)

Defendant's counsel did appear for the second motion hearing on October 1, 2008, and this Court heard oral arguments on defendant's motion. (Docket No. 27.) On that same date, this Court granted defendant's motion in part, and amended the

---

[2]This Court subsequently ordered defendant's attorney to show cause in writing why he should not be held in contempt for his failure to appear, and a show cause hearing and hearing on defendant's motion to amend the scheduling order was set for October 1, 2008. (Docket No. 24/filed September 24, 2008.) Plaintiff's counsel complied with the show cause order. (Docket No. 26/filed September 29, 2008.)

scheduling order, giving defendant until October 10, 2008 to make her expert witnesses available for deposition. (Docket Nos. 28 and 29.)

On October 8, 2008, defendant filed a "Request for Additional Time to Perform Discovery, Get a Second Opinion, and Name an Expert Witness and Possibly Retain Other Counsel," requesting an extension of at least sixty days. (Docket No. 30.) This Court denied defendant's request. (Docket No. 31.) Plaintiffs subsequently filed the instant Motion for Summary Judgment, and a Motion for Summary Judgment on defendant's Counterclaim.

On January 15, 2009, defendant's attorney filed a Motion to Withdraw as Counsel indicating, <u>inter alia</u>, disagreement on the issues of compensation. (Docket No. 37.) On March 3, 2009, defendant filed a Motion for Leave to Dismiss her Counterclaim without prejudice. (Docket No. 52.)

In the instant Motion for Summary Judgment on their Complaint for Declaratory Relief and accompanying Memorandum, plaintiffs request that this Court enforce the Settlement Fee Agreement or, in the alternative, enforce the Contingency Fee Agreement. Plaintiffs argue that defendant voluntarily and freely entered into the Settlement Fee Agreement, which specified the amount of the expenses. Plaintiffs submit documentation of the expenses incurred, and further submit the affidavit of plaintiff Christopher Dysart, who testified that the expenses were customary

and necessary expenses in the prosecution of defendant's Jones Act case. Plaintiffs also submit the affidavit of Deborah Dysart, who testified that the expenses were incurred in the prosecution of defendant's Jones Act case.

In response, defendant concedes that the Settlement Fee Agreement and Contingency Fee Agreement contracts were valid, and does not argue that she entered into the Settlement Fee Agreement under duress or coercion. Defendant argues only that a question of fact exists regarding whether the expenses plaintiffs incurred in defendant's Jones Act lawsuit were reasonable and necessary, and that plaintiffs incurred the expenses in such a manner as to violate the covenant of good faith and fair dealing. In support, defendant argues that plaintiffs must prove the expenses were reasonable, and also argues that the covenant of good faith and fair dealing "seems to require some accounting rather than a summary disposition on the motion because the Plaintiff asserts that his expenses are reasonable and necessary and he will negotiate the liens for medical services as his fee," and that "Ms. Gwin's expectancy was to have her medical bill paid, pay Mr. Dysart his fee and pay reasonable expenses." (Defendant's Memorandum of Law in Response to the Motion for Summary Judgment, Docket No. 48, at 3-4.)

Plaintiffs filed a Reply brief in which they argued that defendant had abandoned the majority of the defenses she had raised to the enforceability of the Settlement Fee Agreement in her Answer

to the Complaint, inasmuch as she failed to present them in response to the Motion for Summary Judgment. Specifically, plaintiffs argued that defendant abandoned the arguments that she signed the Settlement Fee Agreement under duress and undue influence; that plaintiffs' legal representation was below the standard of care; and that the expenses were incurred without defendant's knowledge or permission. Plaintiffs further submit that the covenant of good faith and fair dealing was not violated, inasmuch as plaintiff specifically agreed in writing to pay $135,627.99 in expenses. Plaintiffs also contend that defendant testified that plaintiffs informed her that they were going to take depositions and employ experts, including a vocational rehabilitation expert, and that defendant's speculation about the reasonableness of the expenses she explicitly agreed to in writing do not establish the bad faith necessary to prove a violation of the covenant of good faith and fair dealing. Plaintiffs further contend that defendant has failed to produce any evidence that the expenses she agreed to pay were excessive or unnecessary in the prosecution of her Jones Act case. Finally, plaintiffs argue that defendant's responsive pleading ignores defendant's role in reducing the value of her case, and ignores the fact that her changing medical condition necessitated reevaluation by her medical treatment providers and additional depositions. For the following reasons, plaintiffs' arguments are well-taken.

## II. Legal Analysis

Because this matter is before this Court pursuant to diversity jurisdiction, this Court must apply Missouri's substantive law, and federal procedural law. Erie R. Co. v. Tompkins, 304 U.S. 64 (1938) (federal court sitting in diversity must apply the forum state's substantive law, and federal procedural law); see also Winthrop Resources Corp. v. Stanley Works, 259 F.3d 901, 904 (8th Cir. 2001).

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 246 (1986). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). If the opposing party fails to carry that burden or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. See Celotex, 477 U.S. at 322.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, (1986). "[T]he mere existence of some alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson</u>,477 U.S. at 247-248. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." <u>Matsushita</u>, 475 U.S. at 586. With this standard in mind, the undersigned now addresses plaintiffs' Motion for Summary Judgment on their Complaint.

A. <u>Enforceability of the Settlement Fee Agreement</u>

Under Missouri law, a contract for attorney's fees should be construed under the same rules of construction that apply to any other contract. <u>Tobin v. Jerry</u>, 243 S.W.3d 437, 441 (Mo. Ct. App. 1981) (citing <u>Kramer v. Fallert</u>, 628 S.W.2d 671, 674 (Mo. Ct. App. 1981)). The essential elements of a valid contract are offer, acceptance, and bargained-for consideration. <u>Doran v. Chand</u>, --- S.W.3d ---, 2009 WL 667476, 3 (Mo. Ct. App. 2009) (citing <u>Johnson v. McDonnell Douglas Corp.</u>, 745 S.W.2d 661, 662 (Mo. 1988); <u>Drury v. Missouri Youth Soccer Ass'n, Inc.</u>, 259 S.W.3d 558, 574 (Mo. Ct. App. 2008).

In the case at bar, while neither party argues that the Settlement Fee Agreement was ambiguous or unenforceable, the undersigned finds that the record in this case clearly supports the conclusion that the Settlement Fee Agreement was a valid contract with unambiguous terms.

B.    Abandonment of Defenses

In her Answer to plaintiffs' Complaint, defendant pled that she signed the Settlement Fee Agreement under duress and undue influence; plaintiffs' legal representation was below the standard of care; the expenses in prosecuting her case violated the covenant of good faith and fair dealing; the expenses were incurred without defendant's permission or knowledge; and the expenses incurred were unjustified and unreasonable.  In her reply to plaintiffs' motion for summary judgment, however, she argued only that there is a question of fact regarding whether the expenses were reasonable and necessary; and that the covenant of good faith and fair dealing "seems to require some accounting rather than a summary disposition on the motion," and that "Ms. Gwin's expectancy was to have her medical bill paid, pay Mr. Dysart his fee and pay reasonable expenses."  (Defendant's Memorandum of Law in Response to the Motion for Summary Judgment, Docket No. 48, at 3-4.)  Furthermore, defendant has filed no motion for summary judgment of her own, but has filed a Motion for Leave to Voluntarily Dismiss her Counterclaim, and defendant's counsel has filed a Motion for Leave to Withdraw as her attorney.

The defenses that defendant failed to raise in her reply brief are therefore deemed waived.  See Picht v. John R. Hawks, Ltd., 236 F.3d 446, 451 (8th Cir. 2001) (where defendant pleaded an

affirmative defense but did not press that defense in its response to the plaintiff's motion for partial summary judgment or in its memorandum in support of its own motion for summary judgment, defense was deemed waived); <u>Coney v. Union Pacific R.R.</u>, 136 F.3d 1195, 1196 (8th Cir. 1998) (citing Fed.R.App.P. 28(a) that "[a] party's failure to raise or discuss an issue in his (or her) brief is deemed to be an abandonment of that issue"); <u>Commercial Union Ins. Co. v. McKinnon</u>, 10 F.3d 1352, 1354 (8th Cir. 1993) (the failure to pursue a defense or to mention it in a summary judgment motion waives defense).

In the case at bar, therefore, the undersigned determines that defendant has abandoned her claims that the Settlement Fee Agreement should not be enforced because it was signed under duress or undue influence, that plaintiff's legal representation fell below the standard of care; and that the expenses were incurred without defendant's knowledge or permission, inasmuch as she failed to assert them in her response to plaintiffs' Motion for Summary Judgment.

C.   <u>The Covenant of Good Faith and Fair Dealing</u>

Defendant argues that plaintiffs violated the covenant of good faith and fair dealing by incurring excessive and unnecessary expenses in the prosecution of defendant's Jones Act case.   In support, defendant argues that, because plaintiffs cannot establish the reasonableness or necessity of the experts' charges, there

remains a question of fact defeating summary judgment. Plaintiffs argue that defendant has failed to provide evidence in support of the contention that the expenses were unreasonable, and that the covenant of good faith and fair dealing does not apply when the contending party has specifically agreed to the handling of the issues in writing. For the following reasons, plaintiffs' arguments are well-taken.

The covenant of good faith and fair dealing is implied in every Missouri contract. Raster v. Ameristar Casinos, Inc., --- S.W.3d ---, 2009 WL 484460, 9 (Mo. Ct. App. 2009) (citing Farmers' Electric Cooperative, Inc. v. Missouri Department of Corrections, 977 S.W.2d 266, 271 (Mo. banc 1998)). However, this covenant is not an "overflowing cornucopia of wished-for legal duties." Schell v. LifeMark Hosps. of Mo., 92 S.W.3d 222, 230 (Mo. Ct. App. 2002)(quoting Comprehensive Care Corp. v. RehabCare Corp., 98 F.3d 1063, 1066 (8th Cir. 1996)). Instead, it encompasses only an obligation imposed by law to prevent opportunistic behavior, Schell, 92 S.W.3d at 230, and prevents one party to a contract from acting in such a manner to "evade the spirit of the transaction or so as to deny the other party the expected benefit of the contract." City of St. Joseph v. Lake Contrary Sewer Dist., 251 S.W.3d 362, 370 (Mo. Ct. App. 2008). "Implied obligations rest upon the presumed intentions of the parties as gathered from their written contracts." Crestwood Plaza, Inc. v. Kroger, 520 S.W. 2d

-14-

93, 97 (Mo. Ct. App. 1974). A party claiming breach of this covenant must present substantial evidence that the offending party acted in bad faith, or engaged in unfair dealing. <u>Schell</u>, 92 S.W.3d at 230.

Initially, the undersigned notes that the court will not imply a covenant if the parties have either dealt expressly with the matter, or have left the contract intentionally silent on the point. <u>Id.</u>; <u>see</u> <u>also</u> <u>Acetylene Gas Co. v. Oliver</u>, 939 S.W.2d 404, 409 (Mo. Ct. App. 1996) (covenants will not be implied in a contract for any matter that is specifically covered by the written terms of the contract itself.)

In her response to the instant Motion, defendant argues that "the covenant of good faith and fair dealing seems to require some accounting rather than a summary disposition on the motion because the plaintiff asserts that his expenses are reasonable and necessary and he will negotiate the liens for medical services as his fee." (Docket No. 48 at 3.) Defendant does not specify whether she is alleging that the covenant of good faith and fair dealing in the Contingency Fee Agreement or the Settlement Fee Agreement was breached. Regarding the Settlement Fee Agreement, however, it is clear that the written terms of that contract provide that plaintiff will pay expenses in the amount of $135,627.99. Because the written Settlement Fee Agreement specifically covers the matter of expenses, the covenant of good

-15-

faith and fair dealing will not be implied regarding the matter of expenses. <u>Acetylene Gas Co.</u>, 939 S.W.2d at 409; <u>Crestwood Plaza, Inc.</u>, 520 S.W. 2d at 97.

Even so, regarding either the Settlement Fee Agreement or the Contingency Fee Agreement, defendant cannot prove bad faith. Plaintiffs have submitted evidence documenting the expenses that defendant contractually agreed to pay, and documenting the fact that they were incurred during the prosecution of defendant's Jones Act case, and defendant does not contest this evidence. In their Statement of Uncontroverted Facts, plaintiffs assert that the expenses they incurred were all customary, reasonable and necessary expenses in the prosecution of defendant's Jones Act case against Artco, and in his affidavit, plaintiff Christopher Dysart testified as to the lengthy duration and complexity of defendant's case that necessitated the incurring of the expenses. (Docket No. 36 at 5, ¶ 8.) In response, defendant offers her unsupported allegation that her Jones Act case was a "common soft tissue injury" case, and that a question of fact exists regarding whether it was reasonable for a lawyer to expend that kind of money in prosecuting it. Defendant offers no witness or evidence to support this conclusion. (Docket No. 44 at 3, ¶ 9.) Defendant also cites to her own September 12, 2007 handwritten notations on the Closing Settlement Statement, in which she writes that she thinks that the expenses are exorbitant and unreasonable, and that she was feeling pressured

on the night she reviewed the statements and had insufficient time to review them. (Docket No. 44 at page 3, ¶9, citing Docket No. 44-6 at 2.) Defendant also cites to pages 54-56 and 57-58 of plaintiff Christopher Dysart's deposition, in which he testified regarding why he thought the Jones Act case had significant value before the damaging videotape was revealed; the strengths and weaknesses of the case; and his jury trial experience. (Docket No. 44 at page 3, ¶ 9, citing Docket No. 44-7.)

As noted above, a party asserting breach of the implied covenant of good faith and fair dealing must present substantial evidence that the offending party acted in bad faith or engaged in unfair dealing. <u>Schell</u>, 92 S.W.3d at 230. Defendant herein has not done so. It therefore cannot be said that plaintiffs herein breached the implied covenant of good faith and fair dealing in relation to either the Contingency Fee Agreement or the Settlement Fee Agreement, and furthermore, the covenant is inapplicable to the matter of expenses in the Settlement Fee Agreement inasmuch as the matter was specifically addressed in writing therein.[3]

D.   <u>The Expenses</u>

In support of the reasonableness and necessity of the litigation expenses, plaintiffs submit the Contingency Fee

---

[3]The undersigned also notes that plaintiffs have advised that these expenses have been reduced to $129,206.73 due to, inter alia, plaintiffs' receipt of a refund from one expert. While not dispositive, this certainly lends no support to the conclusion that plaintiffs acted in bad faith.

Agreement and Settlement Fee Agreement contracts, the validity of which defendant does not contest, which respectively reflect plaintiff's written agreement to pay litigation expenses, and her written agreement to pay expenses in the amount of $135,627.99. Plaintiffs also submit documents reflecting the statement charges, costs advanced, outstanding expenses, and outstanding reimbursements that they expended during their seven-year prosecution of defendant's Jones Act case. (Docket No. 32, Exhibits A-D). Plaintiffs also submit the sworn affidavit of paralegal Deborah Dysart, whose normal duties include keeping track of all client expenses, and preparing Closing Settlement Statements.[4] (Docket No. 32-18.) In her affidavit, Ms. Dysart testified that she had reviewed all of the foregoing cost and expense materials related to plaintiffs' prosecution of defendant's Jones Act case, and had confirmed that the charges were all applicable to defendant's case.[5] Plaintiffs also submit the affidavit of plaintiff Christopher Dysart, who testified at length regarding the long and involved process of preparing defendant's

---

[4]Ms. Dysart identified each of the foregoing terms as follows: "statement charges" were office expenses incurred throughout a case, such as postage, long-distance telephone charges, and fax charges; "costs advanced" referred to costs of any experts, depositions, exhibits, focus groups, or other such costs; "outstanding expenses" referred to expenses outstanding at the time a case settles or a judgment is entered; and "outstanding reimbursements" referred to expenses plaintiff Christopher Dysart personally incurred on defendant's behalf, such as travel expenses. (Docket No. 32-18 at pages 1-2.)

[5]As indicated above, Ms. Dysart also testified that, due to subsequent transactions following the settlement of defendant's Jones Act case, the amount of expenses defendant owed had been reduced to $129,206.73. (Docket No. 32-18 at page 3.)

case for trial, and that the expenses incurred therein were customary and necessary.

In his sworn affidavit, plaintiff Christopher Dysart testified that defendant's Jones Act litigation was pending for seven years, during which time her medical condition changed, necessitating many trial continuances, and additional medical evaluations, physician opinions, and depositions. He further testified that, in preparation for trial, he deposed many of defendant's co-workers, supervisors, and treating physicians, and had tendered 15 retained and non-retained expert witnesses. He further testified that, throughout the litigation, defendant maintained that her lower back pain was excruciating and debilitating, and rendered her completely unable to work, and that, during the majority of the time he was prosecuting defendant's Jones Act case, he valued her case in excess of one million dollars.

In response, defendant advances a general challenge to plaintiffs' statement that the expenses incurred in the prosecution of her Jones Act case were customary, reasonable, and necessary, suggesting that the Jones Act case was a common, soft tissue injury case.[6] (Docket No. 44 at 3, ¶ 9.) Defendant does not challenge

---

[6]As plaintiffs note, The only specific expense defendant challenges is a fee paid to a Dr. Thorpe, inasmuch as he charged a fee despite the fact that the trial never took place. However, as plaintiffs point out, Dr. Thorpe's deposition was taken for use at trial.

the medical liens.  Defendant also argues that the fact that she had been unable to produce an expert witness to testify that she would have been able to win a judgment in excess of $300,000.00 at trial calls  into question the reasonableness and necessity of the expenses  plaintiffs  incurred.   Defendant  also  argues  that plaintiffs are not experts on the subject of the expenses, and that their testimony on the subject is self-serving, and suggests that the  reasonableness  of  fees  and  expenses  of  experts  should  be addressed by those experts.   Defendant does not cite, nor does independent research reveal, any Missouri case holding that expert testimony is required to establish the reasonableness and necessity of litigation expenses that a party has contractually agreed to pay.[7]

Defendant  does  not,  however,  challenge  any  of  the evidence  plaintiffs  submit  in  support  of  the  instant  Motion regarding the reasonableness or necessity of the expenses, nor does defendant argue that the expenses were not incurred in the course of plaintiffs' prosecution of her Jones Act case or come forth with any specific evidence or facts which would allow a jury to find in her  favor.   In  fact,  defendant,  despite  being  granted  ample

---

[7]Defendant cites <u>66, Inc. v. Crestwood Commons Redevelopment Corp., et al.</u>, 130 S.W.3d 573 (Mo. Ct. App. 2003), a case dealing with whether a property owner could recover attorneys' fees, costs, and expenses as damages by a landowner in a condemnation suit when the condemnor later ceased condemnation proceedings, not whether an attorney needs expert testimony to prove the reasonableness of litigation expenses a client has contractually agreed to pay.

opportunity, has failed to designate any witnesses to testify on her behalf. Furthermore, defendant's assertion that her inability to find an expert to testify that she would have received in excess of $300,000.00 supports her argument that the expenses were excessive is not well-taken, inasmuch as it ignores the fact that the value of defendant's case plummeted after the damaging videotape was revealed.

Simply put, defendant offers nothing to contradict plaintiffs' documentation of the expenses incurred in this case, or any of the evidence contained in the affidavits of Deborah Dysart and Christopher Dysart. The uncontroverted evidence in this case reveals that defendant contractually agreed to pay the expenses she now challenges. The uncontroverted evidence further supports the finding that plaintiffs incurred the expenses in the course of prosecuting defendant's Jones Act case, and that the expenses were reasonable and necessary, due to the unique circumstances of prosecuting defendant's Jones Act case, as discussed above, and that plaintiffs incurred the expenses in good faith, a finding supported by the fact that, in accordance with the terms of the Settlement Fee Agreement, plaintiffs later reduced the amount of the expenses due to subsequent transactions, including their receipt of a refund from an expert witness. Defendant offers nothing to show that a genuine issue remains for trial.

Because the record in this case, taken as a whole, could

not lead a rational trier of fact to find for the defendant, there is no genuine issue for trial. See Matsushita, 475 U.S. at 586. Plaintiffs are entitled to summary judgment on their Complaint for Declaratory Judgment. Inasmuch as plaintiffs request enforcement of either the Settlement Fee Agreement or the Contingency Fee Agreement, and defendant admits that the Settlement Fee Agreement allows her a greater recovery, the undersigned finds that the interests of both parties are best served by enforcement of the Settlement Fee Agreement, with the provision that the amount of the expenses is reduced to $129,206.73, as provided in the affidavit of Deborah Dysart. (Docket No. 32-18 at page 3.)

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment on Their Complaint for Declaratory Judgment (Docket No. 32) is **GRANTED** as provided herein.

Frederick R. Buckles
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of June, 2009.