UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CHRISTOPHER W. DYSART and )
THE DYSART LAW FIRM, )
)
   Plaintiffs/Counter-Defendants, )
) No. 4:08CV00185 FRB
)
      v. )
)
)
BRENDA GWIN, )
)
   Defendant/Counter-Plaintiff. )

## MEMORANDUM AND ORDER

      Plaintiffs/counter-defendants Christopher W. Dysart and The Dysart Law Firm ("plaintiffs") filed this Declaratory Judgment action against their former client, defendant-counter-plaintiff Brenda Gwin ("defendant"), and defendant subsequently filed a Counterclaim in two counts, alleging in Count I professional negligence, and in Count II seeking a declaratory judgment that fees and expenses incurred in pursuing the underlying case which gives rise to this litigation were not reasonable and necessary.

      Now pending before this Court is Plaintiffs' Motion for Summary Judgment on Defendant's Counterclaim (Docket No. 34/filed January 9, 2009.) All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

**I.   Background**

-1-

The following facts are not in dispute. Defendant, who formerly worked as a cook for American River Transportation Company ("Artco"), hired plaintiffs to represent her in a "Jones Act" lawsuit against her employer for back injuries allegedly sustained on the job. The parties initially entered into a Contingency Fee Agreement, which provided that plaintiffs would take 25% of any recovery in legal fees,[1] and that defendant would pay all lawsuit-related expenses. After suit was filed, the parties deposed numerous witnesses, and plaintiffs prepared and tendered 15 retained and non-retained expert witnesses for deposition. Trial of the case was continued numerous times due to Ms. Gwin's worsening medical condition, and the need for updated medical evaluations, opinions, and depositions in light thereof. At his deposition, plaintiff Christopher Dysart testified that, throughout the course of this litigation, defendant maintained that her back pain was excruciating, debilitating, and rendered her completely unable to work.

In August of 2007, defendant testified at a supplemental deposition that she had severe back pain all day, every day, and that her ability to bend her back had become more restricted. Following this deposition, counsel for Artco produced a surveillance video tape, recorded shortly before the supplemental

---

[1] Defendant had negotiated this fee down from plaintiffs' usual 1/3 contingency fee, and testified that she did so based upon her 20 years of experience dealing in real estate negotiations.

deposition, showing defendant sanding and painting railings on steps outside her house. The video depicted defendant laughing, repeatedly bending beyond 90 degrees, standing on one foot, kneeling down and removing paint using a power sander, a wire brush, and a scraper for extended periods of time. Artco's counsel also produced still photographs showing defendant bending beyond 90 degrees, and engaging in other activities she had testified she was unable to do.

Upon reviewing the surveillance materials and the deposition transcripts of defendant and other witnesses in the case, and considering them in light of other aspects of the case which tended to weigh in Artco's favor, plaintiffs concluded that defendant's credibility had been destroyed, and that a favorable jury verdict was unlikely. Plaintiffs and defendant discussed these matters, and defendant agreed that settlement was in her best interests.

Plaintiffs subsequently negotiated a settlement with Artco for $300,000.00. Defendant asked plaintiff Christopher Dysart if he would reduce his legal fee because she was receiving less money than the original estimated case value, and he agreed. Plaintiffs, defendant, and defendant's husband subsequently signed a Settlement Fee Agreement, the validity of which is not contested, via which defendant would receive a net settlement of $55,878.02, which was the amount left over after both the litigation expenses and defendant's medical liens were paid. (Docket No. 34-14.) The

Settlement Fee Agreement further provided that plaintiffs would take no legal fee out of the settlement proceeds, but would instead be able to keep any money they were able to negotiate off of defendant's medical liens, as long as that amount did not exceed 25% of $300,000.00. Defendant signed a settlement release and stipulation of dismissal on or about September 12, 2007, which remains in effect.

Defendant subsequently refused to abide by the Settlement Fee Agreement's terms, and plaintiffs filed the instant Complaint for Declaratory Judgment. Defendant filed a two-count Counterclaim, alleging professional negligence and declaratory judgment, respectively. For her claim of professional negligence in Count I, defendant alleges that plaintiffs used duress, undue influence, coercion and threats to get her to sign the Settlement Fee Agreement; and that plaintiffs failed to take her case to trial and failed to meet the standard of skill, care, and learning required of lawyers. For her request for declaratory judgment in Count II, defendant alternately requests that this Court determine, as a matter of law, that the expenses plaintiffs incurred should not have exceeded $20,000.00.

Under this Court's original Case Management Order, the parties were to disclose their experts by August 1, 2008. Defendant did not disclose any experts by this date. On September 9, 2008, defendant filed a Motion to Amend the Scheduling Order and give her additional time to designate her expert witness. (Docket

No. 19.) Plaintiffs opposed the Motion, and a hearing on the matter was scheduled for September 24, 2008. (Docket No. 22.) Defendant's attorney, however, failed to appear for the hearing.[2] (Docket No. 25.)

Defendant's counsel did appear for the second motion hearing on October 1, 2008, and this Court heard oral arguments on defendant's motion. (Docket No. 27.) On that same date, this Court granted defendant's motion in part, and amended the scheduling order, giving defendant until October 10, 2008 to make her expert witnesses available for deposition. (Docket Nos. 28 and 29.)

On October 8, 2008, defendant filed a "Request for Additional Time to Perform Discovery, Get a Second Opinion, and Name an Expert Witness and Possibly Retain Other Counsel," requesting an extension of at least sixty days. (Docket No. 30.) This Court denied defendant's request. (Docket No. 31.) Plaintiffs subsequently filed the instant Motion for Summary Judgment, and a Motion for Summary Judgment on their Complaint for Declaratory Judgment.

On January 15, 2009, defendant's attorney filed a Motion to Withdraw as Counsel indicating, <u>inter alia</u>, disagreement on the issue of compensation. (Docket No. 37.) On March 3, 2009,

---

[2] This Court subsequently ordered defendant's attorney to show cause in writing why he should not be held in contempt for his failure to appear, and a show cause hearing and hearing on defendant's motion to amend the scheduling order was set for October 1, 2008. (Docket No. 24/filed September 24, 2008.) Plaintiff's counsel complied with the show cause order. (Docket No. 26/filed September 29, 2008.)

defendant filed a Motion for Leave to Dismiss her Counterclaim without prejudice. (Docket No. 52.)

In the instant Motion for Summary Judgment on Defendant's Counterclaim and accompanying Memorandum, plaintiffs submit that they are entitled to judgment as a matter of law because defendant has failed to name an expert or present any expert testimony on the issue of professional negligence, and defendant therefore cannot prevail on either her claim for professional negligence or declaratory judgment. While defendant filed a Memorandum in response to Plaintiffs' Motion for Summary Judgment on Their Complaint for Declaratory Judgment, she filed no Memorandum in response to the instant Motion. Defendant did file a response to plaintiffs' statement of uncontroverted facts, however, which is addressed below. Defendant also filed a Motion to Dismiss Counterclaim, requesting leave to dismiss her Counterclaim without prejudice. (Docket No. 52/filed March 3, 2009).[3] For the following reasons, plaintiffs are entitled to summary judgment on both counts of defendant's Counterclaim.

**II. Legal Analysis**

<u>Count I</u> <u>Professional Negligence</u>

Because this matter is before this Court pursuant to diversity jurisdiction, this Court must apply Missouri's

---

[3]Defendant's attorney also filed a Motion to Withdraw as Counsel for the Defendant Counterclaim Plaintiff. (Docket No. 37/filed January 15, 2009.)

substantive law, and federal procedural law.  Erie R. Co. v. Tompkins, 304 U.S. 64 (1938) (federal court sitting in diversity must apply the forum state's substantive law, and federal procedural law); see also Winthrop Resources Corp. v. Stanley Works, 259 F.3d 901, 904 (8th Cir. 2001).

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 246 (1986).  Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  If the opposing party fails to carry that burden or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted.  See Celotex, 477 U.S. at 322.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, (1986).  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."  Matsushita, 475 U.S. at 586.  With this

-7-

standard in mind, the undersigned now addresses plaintiffs' Motion for Summary Judgment on Defendant's Counterclaim.

In Missouri, a plaintiff pursuing a claim for legal malpractice must establish four elements in order to prevail at trial. Those elements are: (1) the existence of an attorney-client relationship (which defendants herein admit); (2) either negligence or breach of contract by the defendant; (3) such negligence or breach of contract was the proximate cause of plaintiff's damages; and (4) plaintiff was damaged. Klemme v. Best, 941 S.W.2d 493, 495 (Mo. banc 1997); State ex rel. Selimanovic v. Dierker, 246 S.W.3d 931, 933 (Mo. 2008). To establish that an attorney was negligent, a plaintiff must show that the attorney failed to exercise that degree of skill and diligence ordinarily used under the same or similar circumstances by members of the legal profession. Thiel v. Miller, 164 S.W.3d 76, 82 (Mo. Ct. App. 2005). To prove damages, the plaintiff must prove that, but for the attorney's wrongful conduct, the result in the underlying proceeding would have been different. Mogley v. Fleming, 11 S.W.3d 740, 747 (Mo. Ct. App. 1999) (citing Egan v. Craig, 967 S.W.2d 120, 124 (Mo. Ct. App. 1998)).

A lawyer's negligence is a question of fact, not a question of law. Zweifel v. Zenge and Smith, 778 S.W.2d 372, 373 (Mo. Ct. App. 1989). Except in cases in which the negligence of the lawyer is "clear and palpable" to a jury of laymen, expert testimony is required to establish a claim of legal malpractice.

Thiel, 164 S.W.3d at 85. Normally, the clear and palpable exception is applied in straightforward cases in which the issues can be understood by a jury without the benefit of expert opinion testimony, such as when an attorney has allowed a time limitation to elapse. Zweifel, 778 S.W.2d at 374.

From the record in this case, the undersigned sees nothing clear and palpable in determining whether plaintiffs were negligent in their handling of defendant's Jones Act case; whether such negligence was the proximate cause of defendant's alleged damages; or whether the result of the underlying proceedings would have been different absent the plaintiffs' negligence. The case at bar does not involve matters typically understood to fall within the clear and palpable exception, such as allowing the expiration of a time limitation. Defendant was therefore required to present expert testimony to support her claim of professional negligence, which she failed to do despite being afforded ample opportunity. See Thiel, 164 S.W.3d at 85; Zweifel, 778 S.W.2d at 374. In the absence of expert testimony, defendant fails to make a submissible case of professional negligence, and plaintiffs are entitled to summary judgment in their favor on Count I of defendant's Counterclaim.

Count II Declaratory Judgment

Defendant presents no evidence supporting her claim for declaratory judgment. In their Statement of Facts in support of the instant Motion, plaintiffs assert that the expenses they

incurred in prosecuting defendant's Jones Act case were customary, reasonable, and necessary. Plaintiffs also submit the Contingency Fee Agreement, via which defendant agreed to pay litigation expenses, and the Settlement Fee Agreement, via which defendant specifically agreed to pay $135,627.99 in expenses. Plaintiffs also submit documentation detailing the expenses incurred in defendant's Jones Act case, which included documents reflecting statement charges, costs advanced, outstanding expenses, and outstanding reimbursements that plaintiffs expended during their prosecution of defendant's Jones Act case. (Docket No. 34, Exhibits A-D.) Plaintiffs also submit the sworn affidavit of paralegal Deborah Dysart, whose normal duties include keeping track of all client expenses. (Docket No. 32-18.) Ms. Dysart testified that she had reviewed all of the foregoing cost and expense materials, and had confirmed that the charges were related to the plaintiffs' prosecution of defendant's case. Plaintiffs also submit the sworn affidavit of plaintiff Christopher Dysart, who testified at length regarding the long and involved process of preparing defendant's case for trial, necessitating the incurrence of the expenses at issue herein.

In response, defendant generally challenges plaintiffs' statement that the charges incurred were customary, reasonable and necessary, suggesting that defendant's case was merely a soft tissue injury case. She offers nothing supporting her assertion that the expenses in her Jones Act case should not have exceeded

$20,000.00. As explained above, this Court worked with the defendant regarding the filing schedule, and defendant was given ample opportunity to present this Court with evidence tending to prove the substance of her claim in Count II. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Defendant has presented nothing which would lead a rational trier of fact to find that the expenses in the Jones Act litigation should not have exceeded $20,000.00, and has apparently pulled that figure out of the air. This Court therefore finds that plaintiffs are entitled to summary judgment in their favor on Count II of defendant's Counterclaim.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment on Defendant's Counterclaim (Docket No. 34) is **GRANTED** as provided herein.

/s/ Frederick R. Buckles
Frederick R. Buckles
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of June, 2009.